WARREN W. NIELSEN *et al.*, Plaintiffs-Appellants, v. UNITED SER-
VICES AUTOMOBILE ASSOCIATION, Defendant-Appellee.

Second District   No. 2—92—0862

Opinion filed April 13, 1993.—Rehearing denied May 17, 1993.

Burl F. Nader, of Libertyville, for appellants.

Momkus, Ozog & McCluskey, of Downers Grove (James W. Ozog, of counsel), for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiffs, Warren W. Nielsen and Pamela S. Nielsen, appeal from a judgment of the circuit court of Lake County dismissing their second amended complaint (complaint) against defendant, United Services Automobile Association. The circuit court granted defendant's motion to dismiss all five counts of the complaint with prejudice pursuant to section 2—615 of the Code of Civil Procedure. Ill. Rev. Stat. 1991, ch. 110, par. 2—615.

The pleadings reveal defendant is an insurance company which sells its insurance policies directly to customers from its home office in San Antonio, Texas. It does not sell its policies through local agents or brokers.

In 1977, shortly after plaintiffs purchased a single-family residence in Lake County, Illinois, defendant sold plaintiffs a home owner's insurance policy (the policy). Defendant induced plaintiffs to discontinue their then-existing homeowner's policy by written promotional sales communications promising better insurance and service. The policy provided up to $40,000 of fire insurance coverage for fire damage to plaintiffs' residence and personal property coverage of up to 50% of the structural fire damage coverage.

Thereafter, defendant annually renewed the policy. From 1977 until 1985, defendant did not increase the amount of fire insurance coverage provided by the policy. In 1985, defendant unilaterally added an "Adjusted Building Cost Endorsement" (the endorsement) to the policy. The endorsement increased the maximum fire insurance coverage provided by the policy.

On April 16, 1988, while the policy was in force, a fire destroyed plaintiffs' residence and its contents. At that time, the endorsement

had increased the policy's fire insurance coverage for damage to plaintiffs' residence to a maximum of $44,000.

Plaintiffs were underinsured. The fire damage to plaintiffs' residence and its contents exceeded the policy limits for these losses by $45,000.

Plaintiffs filed their complaint in this case pursuant to section 13—217 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 13—217). The complaint contained a single count sounding in negligence. The trial court granted defendant's motion to dismiss plaintiffs' complaint without prejudice and allowed plaintiffs to file an amended complaint.

Plaintiffs filed their first amended complaint, which contained five counts. The five counts were based on theories of breach of contract (two counts), breach of implied warranty, breach of fiduciary duty, and negligence. The trial court ordered plaintiffs' first amended complaint stricken and allowed plaintiffs to file a second amended complaint.

Plaintiffs' second amended complaint contained five counts. The counts sounded in five theories, respectively: breach of contract, breach of custom and usage with the strength of law, breach of implied warranty, breach of fiduciary duty, and negligence. Defendant moved to dismiss the second amended complaint. The trial court granted defendant's motion to dismiss with prejudice. In its judgment, the court found that: count I did not plead a duty which arose under the insurance contract and did not allege damages; count II did not plead a duty under Illinois law and did not allege damages; as to count III, no implied warranty existed under Illinois law under the facts alleged; count IV did not plead facts which supported an agency relationship between the parties; and as to count V, there was no duty under Illinois law under the facts alleged.

On appeal plaintiffs seek reversal of the judgment of the court below contending that each count of the complaint stated a cause of action.

In reviewing the dismissal of a cause of action on the pleadings, well-settled principles guide us. In *Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, our supreme court stated:

> "A trial court should dismiss a cause of action on the pleadings only if it is clearly apparent that no set of facts can be proven which will entitle a plaintiff to recover. [Citations.] When the legal sufficiency of all or part of a complaint is challenged by a section 2—615 motion to strike or dismiss, all well-pleaded facts in the attacked portions of the complaint are to be taken as true [citation] and a reviewing court must deter-

mine whether the allegations of the complaint, when interpreted in the light most favorable to the plaintiff, are sufficient to set forth a cause of action upon which relief may be granted. A motion to strike a portion of a complaint does not admit conclusions of law or fact unsupported by the specific factual allegations upon which such conclusions rest. [Citation.] Therefore, we will consider only the facts of this case as plaintiff presented them in his complaint." (*Burdinie v. Village of Glendale Heights*, 139 Ill. 2d at 504-05.)

We will apply these principles to each count of plaintiffs' second amended complaint.

Count I of the complaint sounds in breach of contract. Plaintiffs allege that defendant breached a duty to sell plaintiffs fire insurance coverage for the "full, fair, insurable value" (full coverage) of plaintiffs' residence. Plaintiffs contend that this duty arose from the fact that defendant sold insurance directly to plaintiffs without using brokers or local agents; that defendant should therefore be held to the same standard as a broker or local agent; and that brokers and local agents are required to sell fire insurance only in full coverage amounts.

The trial court found as a matter of law that no such duty could arise under the contract as alleged. We agree.

To plead properly a cause of action in breach of contract, a plaintiff must allege the essential elements of the cause of action. (*Allstate Insurance Co. v. Winnebago County Fair Association, Inc.* (1985), 131 Ill. App. 3d 225, 233.) The essential elements for breach of contract are: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resultant injury to the plaintiff. (*Allstate Insurance Co.*, 131 Ill. App. 3d at 233.) A defendant's failure to comply with a duty imposed by the contract gives rise to the breach. (*Hickox v. Bell* (1990), 195 Ill. App. 3d 976, 992.) In alleging a breach of contract by a defendant, a plaintiff's pleadings must allege facts sufficient to indicate the terms of the contract claimed to have been breached. *Allstate Insurance Co.*, 131 Ill. App. 3d at 233.

▪ Here, even when interpreting the allegations of the complaint in the light most favorable to plaintiff, count I of the complaint failed to allege facts sufficient to indicate the terms of the contract which could give rise to a duty for defendant to sell plaintiffs only a full coverage policy. Plaintiffs did not allege in their complaint that they requested or defendant promised to provide coverage greater than that provided by the policy. Plaintiffs did not allege that the policy itself

required defendant to provide full coverage. In addition, plaintiffs do not cite any authority for their contention that brokers and agents must sell only full coverage policies. Nor do plaintiffs cite any authority for their position that this purported duty should be imputed to a direct-sales insurer as part of an insurance contract. Under Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)), because plaintiffs cite no authority in support of their argument that a direct-sales insurer must sell only full coverage fire insurance policies, we may reject plaintiffs' argument for that reason alone. *Amp-Rite Electric Co. v. Wheaton Sanitary District* (1991), 220 Ill. App. 3d 130, 166.

Furthermore, an insurer does not have a duty to review the adequacy of an insured's coverage when a policy is renewed. (*Cleary v. Country Mutual Insurance Co.* (1978), 63 Ill. App. 3d 637, 638 (insurer had no duty to advise insured as to adequacy of insured's automobile liability coverage).) Rather, insured parties have the burden of knowing the contents of their insurance policies and an insurer does not have a duty to suggest full coverage even when the insurer knows the coverage provided is inadequate. *Lazzara v. Howard A. Esser, Inc.* (7th Cir. 1986), 802 F.2d 260, 274 (applying Illinois law) (insurer had no duty to advise insured of known gap in insured's automobile liability coverage).

For these reasons, we hold that the trial court correctly dismissed count I of plaintiffs' second amended complaint because count I did not plead a duty which arose under the insurance contract as alleged. Accordingly, it is not necessary for us to determine whether count I alleged damages.

Count II of the complaint is entitled "Breach of Custom and Usage with the Strength of Law." Count II alleges that in Illinois it is customary for local agents or brokers, as insurance sellers, to review the adequacy of their customers' coverage upon initial sale and upon renewal of an insurance policy and that this function is widely advertised as keeping insureds adequately insured. Count II further alleges that this custom and usage gave rise to a duty requiring defendant, as an insurance seller, to keep plaintiffs fully insured. Count II finally alleges that defendant breached this duty and as a result plaintiffs were underinsured and thereby damaged.

The trial court found that count II did not plead a duty under Illinois law. We agree.

Generally, when the terms of a contract are clear and unambiguous, the terms alone determine the duties of the parties. (*Marathon Plastics, Inc. v. International Insurance Co.* (1987), 161 Ill. App. 3d 452, 464.) Evidence of custom and usage is only admissible to explain

uncertain or ambiguous terms. (*Ruthman v. Guarantee Insurance Agency Co.* (1980), 89 Ill. App. 3d 997, 999.) Even when appropriate in order to clarify terms, a custom or usage to be binding must be so well known, uniform, long-established and generally acquiesced in as to induce the belief that the parties contracted with reference to it. *Metro-Goldwyn-Mayer, Inc. v. A B C-Great States, Inc.* (1972), 8 Ill. App. 3d 836, 838.

■ In count II, plaintiffs failed to plead facts which could give rise to a duty, based on custom and usage, for defendant to sell only full coverage fire insurance policies. Plaintiffs did not allege that the terms of the policy were unclear or ambiguous. Plaintiffs did not allege that the terms of the contract could have been construed to require that defendant sell plaintiffs only full coverage for their residence. Plaintiffs did not allege that the purported custom and usage was so well known that the parties must have contracted with reference to it. Plaintiffs cite no authority for their contention that defendant had a duty, based on custom and usage, to sell plaintiffs only full coverage, and for that reason alone we may consider plaintiffs' argument waived. *Amp-Rite Electric Co.*, 220 Ill. App. 3d at 166.

Count II really amounts to a public policy argument cloaked in the rubric of custom and usage. Plaintiffs argue that, as a matter of public policy, all insurance sellers, whether local agents or brokers or direct-sales insurance companies, should be required to sell only full coverage fire insurance policies in order to safeguard insureds.

We find plaintiffs' public policy argument unpersuasive. Such a policy would undermine the general principle that parties may contract for whatever insurance coverage terms they desire. (43 Am. Jur. 2d Insurance §462 (1982).) Such a policy could have unknown economic consequences. Such a policy would overrule the clear law that insureds have the primary responsibility to determine their own insurance needs. (*Cleary*, 63 Ill. App. 3d at 638.) Plaintiffs do not allege that they did not know what the terms of their policy were or that they had requested additional coverage or that they contracted with defendant expecting the same services provided by a local agent or broker. Under plaintiffs' view, it would be to an insured's advantage not to review his own policy for full coverage because obtaining a full coverage policy could increase his premiums while maintaining the policy at current levels might not increase the premium but the insurer would still be required to provide full coverage. Finally, even if a public policy requiring insurance sellers to sell only full coverage policies were warranted, the legislature should enact such a standard, not the courts.

For all these reasons, we hold that the trial court properly dismissed count II of plaintiffs' second amended complaint. Accordingly, it is unnecessary to reach the issue of whether count II alleged damages.

Count III of the complaint sounds in breach of implied warranty. Count III alleges that by renewing the policy and unilaterally attaching an inflation endorsement defendant impliedly warranted to plaintiffs that they had full coverage. Count III alleges that by not actually providing full coverage defendant breached the implied warranty.

The trial court found that no implied warranty existed under the facts as alleged. We agree.

■ Implied warranties generally arise under the Uniform Commercial Code (UCC) provisions for the sale of goods. (Ill. Rev. Stat. 1991, ch. 26, pars. 2—314, 2—315.) However, the UCC does not apply to insurance contracts because insurance contracts are not for the sale of "goods." (*Elrad v. United Life & Accident Insurance Co.* (N.D. Ill. 1985), 624 F. Supp. 742, 744, citing J. White & R. Sommers, Uniform Commercial Code, at 6 (2d ed. 1980).) In addition, Illinois courts have held that insurance policies do not contain an implied warranty as to the adequacy of the policy's coverage. *Cleary*, 63 Ill. App. 3d at 637-38.

For these reasons, we hold that the trial court properly dismissed count III of plaintiff's second amended complaint because no implied warranty existed under the facts as alleged.

Count IV of plaintiffs' complaint alleges breach of fiduciary duty by defendant. Count IV again alleges that fire insurance can only be purchased in full coverage amounts. Count IV also alleges that, as the seller of the policy to plaintiffs, defendant was acting as either plaintiffs' agent or their broker which gave rise to a fiduciary duty, as a matter of law, for defendant to sell plaintiffs only a full coverage policy. Count IV alleges that defendant breached this fiduciary duty by issuing a renewal policy for less than the full coverage amount.

The trial court found that the allegations of the complaint did not plead facts which supported an agency relationship between the parties. We agree.

In an insurance setting, an agent or broker acts in an agency relationship for the insured when the agent or broker acts as an intermediary for the insured with an insurer on behalf of the insured. (*Black v. Illinois Fair Plan Association* (1980), 87 Ill. App. 3d 1106, 1109.) An agent or broker acting in an agency relationship for an insured with an insurer is a fiduciary of the insured and owes fiduciary duties to the insured. *Black*, 87 Ill. App. 3d at 1110.

Here, plaintiffs concede that no agent or broker acted in an agency capacity on their behalf with respect to defendant, the insurer. In fact, defendant represented its own interests as a principal, not as plaintiffs' agent. However, plaintiffs argue that because defendant was a seller of insurance, the fiduciary duties of an agent or broker acting in an agency relationship for the insured were imputed to defendant. We disagree. In Illinois, there is no fiduciary relationship between an insurance company and an insured. (*Overbey v. Illinois Farmers Insurance Co.* (1988), 170 Ill. App. 3d 594, 605.) Without a fiduciary relationship, there are no fiduciary duties and no basis for a cause of action alleging breach of fiduciary duties. *Overbey*, 170 Ill. App. 3d at 605.

Even if, *arguendo*, there was a fiduciary relationship between an insurer and an insured, plaintiffs' allegations fail to support a duty to sell only full coverage. The primary function of an agent or broker acting in an agency relationship for an insured is faithfully to negotiate and procure an insurance policy according to the wishes and requirements of the insured. (*Shults v. Griffin-Rahn Insurance Agency, Inc.* (1990), 193 Ill. App. 3d 453, 456.) Here, plaintiffs do not allege that defendant failed to procure insurance according to their wishes. Rather, plaintiffs again resort to their premise that a vendor must only sell full coverage fire insurance. For the reasons discussed above, this premise must be rejected.

Accordingly, we hold that the trial court properly dismissed count IV of plaintiffs' second amended complaint.

Count V of plaintiffs' complaint sounds in negligence. The complaint alleges that, as the vendor of fire insurance to plaintiffs, defendant had a common-law duty to sell plaintiffs only full coverage insurance. The complaint alleges that defendant negligently breached its duty to plaintiffs when it failed to determine plaintiffs' full coverage needs and issue a policy for full coverage. Finally, the complaint alleges that defendant's negligence directly and proximately caused plaintiffs to be underinsured and suffer damage when a fire destroyed their home.

In its order to dismiss count V, the trial court found that defendant had no duty under the facts alleged. On appeal, defendant contends there was no duty and that the alleged damages are not recoverable because they are based on a tort theory which does not allow recovery of economic damages.

To state a cause of action for negligence, a complaint must allege facts sufficient to show the following elements: the existence of a duty, breach of the duty, and injury to the plaintiff proximately caused

by the breach. (*Ziemba v. Mierzwa* (1991), 142 Ill. 2d 42, 45.) Whether a legal duty exists is a question of law to be determined by the court. (*Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 140.) The question before us is whether the law imposed a duty on defendant, as a vendor of residential fire insurance, to only sell plaintiffs a fire insurance policy providing full coverage.

■ We conclude that the law does not impose such a duty. Plaintiffs failed to cite any authority for their contention that the law imposes a duty on defendant to only sell full coverage policies. This alone is a sufficient basis to reject plaintiffs' argument. (*Amp-Rite Electric Co.*, 220 Ill. App. 3d at 166.) In addition, Illinois case law is contrary to plaintiffs' position. An insurer has an implied duty of good faith and fair dealing with respect to an insured. (*Robacki v. Allstate Insurance Co.* (1984), 127 Ill. App. 3d 294, 297.) But this duty does not include the burden of reviewing the adequacy of an insured's policy when the policy is renewed. (*Cleary*, 63 Ill. App. 3d at 638.) Finally, although we recognize plaintiffs' public policy arguments and realize that the existence of a legal duty is ultimately a question of public policy (*Shults*, 193 Ill. App. 3d 453), we cannot agree with plaintiffs' public policy arguments. We believe it is the insured, not the insurer, who best knows his insurance needs and the premium he can afford. If full coverage was always required, a potential insured could be faced with a choice of having to purchase more insurance than he could afford or no insurance at all. If an insured is to be faced with such a choice, it is up to the legislature to mandate that choice.

A final matter before us is whether the *Moorman* doctrine (*Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 88) acts to bar the recovery of plaintiffs' economic losses under plaintiffs' tort theory of negligence. Plaintiffs note that our supreme court's recent opinion, after rehearing, in *Collins v. Reynard* (1992), 154 Ill. 2d 48, allowed an exception to the *Moorman* doctrine for lawyer malpractice suits. Plaintiffs contend that count V of their complaint alleges professional malpractice which should also be exempt from the *Moorman* doctrine under *Collins*. Plaintiffs also cite Chief Justice Miller's special concurrence in *Collins* and argue it held that the *Moorman* doctrine only applies in a context of true commercial damages and therefore should not apply in this case because plaintiffs' transaction with defendant was not commercial in nature.

■ We disagree with both of plaintiffs' interpretations of *Collins*. Writing for the court, Justice Heiple stated, "the ruling we announce today is limited to the specific field of lawyer malpractice as an excep-

tion to the so-called *Moorman* doctrine and to the distinctions separating contract from tort." (*Collins*, 154 Ill. 2d at 52.) Accordingly, plaintiffs' contention that *Collins* supports a kind of general exception to the *Moorman* doctrine for professional malpractice suits based on tort theories is specifically belied by the text of the *Collins* opinion. We also disagree with plaintiffs' contention that the special concurrence in *Collins* limits application of the *Moorman* doctrine to commercial contracts. While the special concurrence notes that the doctrine has most often been applied in cases involving commercial contracts, it does not limit the doctrine's application to commercial contracts. In fact, the special concurrence stated that "[i]n essence, the economic loss, or commercial loss, doctrine denies a remedy in tort to a party whose complaint is rooted in disappointed contractual *or* commercial expectations." (Emphasis added.) *Collins*, 154 Ill. 2d at 54.

The *Moorman* doctrine applies in this case precisely because count V of plaintiffs' complaint was rooted in disappointed contractual expectations even though count V sounded in negligence. As indicated above, we have concluded that defendant did not have a duty to plaintiffs with respect to the adequacy of their fire insurance policy coverage apart from their contractual undertakings. Accordingly, under the *Moorman* doctrine, plaintiffs may not recover economic losses alleged in a count based on tort theory such as count V.

For all these reasons, we hold that the trial court properly dismissed count V of plaintiffs' second amended complaint.

The judgment of the circuit court of Lake County granting defendant's motion to dismiss plaintiffs' second amended complaint and dismissing all five counts of the complaint is affirmed.

Affirmed.

McLAREN and QUETSCH, JJ., concur.