NO. 4-05-0796          Filed: 7/14/06

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| COUNTRY MUTUAL INSURANCE COMPANY, | ) | Appeal from |
| Plaintiff, | ) | Circuit Court of |
| v. | ) | Piatt County |
| STEVE CARR, d/b/a CARR CONSTRUCTION; | ) | No. 04L15 |
| JON SEEVERS; SEEVERS FARM DRAINAGE, | ) | |
| INC.; RUTH ROLLINGS; and DANA BOWYER, | ) | |
| Defendants, | ) | |
| and | ) | |
| STEVE CARR, d/b/a CARR CONSTRUCTION, | ) | |
| Defendant and Third-Party | ) | |
| Plaintiff-Appellant, | ) | |
| v. | ) | Honorable |
| HAROLD VOGELZANG, | ) | John P. Shonkwiler, |
| Third-Party Defendant-Appellee. | ) | Judge Presiding. |

_____

JUSTICE KNECHT delivered the opinion of the court:

Steve Carr, d/b/a Carr Construction, purchased a commercial general liability insurance policy issued by Country Mutual Insurance Company (Country Mutual) from Harold Vogelzang. After Carr purchased the policy, he was sued for alleged damage to a home he constructed; the allegations claimed Carr placed inappropriate backfill in and around the residence's basement walls and then operated heavy equipment near those walls, causing damage to those walls. Carr filed a claim with Country Mutual for the defense of that lawsuit. Country Mutual followed by filing a declaratory-judgment action, in which it asserted it owed no duty to indemnify or defend Carr in the lawsuit, as the property damage was caused by his own work which was excluded from the commercial general liability coverage.

In May 2005, Carr filed his amended third-party complaint against Vogelzang.  In his complaint, Carr alleged Vogelzang breached the statutory duty to provide ordinary care in selling and procuring insurance (see 735 ILCS 5/2-2201(a) (West 1998)).  On August 31, 2005, the trial court dismissed with prejudice the negligence counts of Carr's third-party complaint, upon finding Vogelzang owed Carr no duty and the Moorman doctrine barred those claims.

Carr appeals and argues (1) he stated a claim for negligence because section 2-2201(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2-2201(a) (West 1998)) required Vogelzang to exercise ordinary care in procuring the insurance policy Carr requested, and (2) the Moorman doctrine (Moorman Manufacturing Co. v. National Tank Co., 91 Ill. 2d 69, 435 N.E.2d 443 (1982)) does not apply.  We agree with Carr and reverse and remand.

I. BACKGROUND

On an unspecified date, Carr, d/b/a Carr Construction, filed an insurance claim with Country Mutual.  Carr's claim sought coverage for a lawsuit filed against Carr "for damages alleged to have occurred to property during [Carr's] work at" that property.  Country Mutual denied coverage of the claim.  On May 7, 2004, Country Mutual filed a declaratory-judgment action, seeking a court ruling it had no duty under the policy to defend or indemnify Carr.

In response, Carr filed a counterclaim against Country Mutual, asserting Country Mutual was responsible for the actions of its agent and employee, Vogelzang.  Specifically, the counterclaim asserted Vogelzang improperly procured an insurance policy

that did not cover the risks Carr sought to protect against. In May 2005, Carr filed an amended third-party complaint against Vogelzang. This complaint asserted two counts of negligence based on a statutory duty and one count of breach of contract. The breach-of-contract claim, count III, is not at issue on appeal.

In count I, Carr alleged Vogelzang was an agent of Country Mutual. According to count I, Vogelzang "held himself out as a qualified insurance agent for Country" Mutual and procured insurance policies from Country Mutual to the general public. Carr purchased a business policy from Vogelzang for "liability coverage relative to jobs performed by him in his construction business." Vogelzang told Carr the "policy issued would provide general and complete coverage for all matters and usual, customary, and obvious risks associated with being a general contractor." The complaint asserted, under section 2-2201(a), Vogelzang owed Carr the duty of exercising ordinary care, competence, and skill in procuring insurance coverage. Vogelzang breached this duty by issuing Carr a policy that did not provide general and complete coverage for "the most obvious risks associated with being a general contractor." As a result of the breach, Country Mutual denied Carr coverage.

In count II, Carr alleged a second count of negligence based on a statutory duty of care. In this count, the allegations were the same as in count I, except Carr alleged Vogelzang was an independent insurance agent or broker.

In June 2005, Vogelzang moved to dismiss counts I and II pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West

2004)).  In his motion, Vogelzang argued count I of the complaint alleges Vogelzang was Country Mutual's agent.  As an agent of Country Mutual, according to Vogelzang, Vogelzang owed a duty of care only to the insurance company--not to Carr.  Vogelzang argued that count II states he was an independent insurance agent or broker.  Vogelzang disputed this legal conclusion by attaching exhibits to show he was an agent of Country Mutual.  Vogelzang further argued both counts were barred by the Moorman doctrine.

In August 2005, the trial court dismissed counts I and II with prejudice.  The court concluded Vogelzang owed no duty to Carr and the Moorman doctrine barred the negligence claims.  This appeal followed.

## II. ANALYSIS

### A. The Propriety of the Section 2-619 Motion To Dismiss

On appeal, Carr first argues Vogelzang improperly moved to dismiss count I under section 2-619 of the Code (735 ILCS 5/2-619 (West 2004)).  Carr contends because Vogelzang argues the allegations do not give rise to a claim, the motion to dismiss count I on this ground should have been brought under section 2-615 (735 ILCS 5/2-615 (West 2004)).  In response, Vogelzang contends he properly filed the claim under section 2-619 and, in the alternative, if he did not, Carr suffered no prejudice by the improper designation.

A section 2-615(a) motion to dismiss "tests the legal sufficiency of the plaintiff's claim, while a motion to dismiss under section 2-619(a) [citation] admits the legal sufficiency of the plaintiff's claim, but asserts certain defects or defenses outside the pleading which defeat the claim."  Wallace v. Smyth,

203 Ill. 2d 441, 447, 786 N.E.2d 980, 984 (2002). Vogelzang's motion to dismiss, as a whole, touches on both section 2-615 and section 2-619. As to count I, Vogelzang asserts Carr did not state a claim for negligence in that the facts do not establish a duty. Vogelzang is not asserting Carr sufficiently pleaded negligence, including a duty, but that negligence is defeated by a certain defect or defense. Vogelzang's argument should have been brought under section 2-615.

As to count II, Vogelzang does not dispute the legal sufficiency of the claim but emphasizes affirmative matters outside of the record to defeat the claim. Vogelzang contends Carr improperly pleaded him to be an insurance broker. To support his claim, Vogelzang attached exhibits. This is a section 2-619 argument. See Wallace, 203 Ill. 2d at 447, 786 N.E.2d at 984. Moreover, Vogelzang's argument that both of Carr's claims are barred by the Moorman doctrine was properly brought under section 2-619. As to the Moorman doctrine, Vogelzang asserts even if Carr stated a claim, that claim is barred by an affirmative matter, the Moorman doctrine.

Vogelzang's error does not require a reversal. Carr has not argued nor does the record establish Carr was prejudiced by the improper designation. See Wallace, 203 Ill. 2d at 447, 786 N.E.2d at 984.

### B. Section 2-2201(a)

We turn now to Carr's argument the third-party complaint stated a claim of negligence. Carr argues count I alleges Vogelzang owed him a duty of ordinary care in procuring

an insurance policy for his business.  While Carr agrees the common law did not recognize a duty between an insurance agent and an insured, he maintains the legislature created a statutory duty in section 2-2201(a) (735 ILCS 5/2-2201(a) (West 1998)) that requires insurance agents to act with ordinary care in procuring insurance policies for their customers.  Carr, however, concedes he could not find any published case since the enactment of section 2-2201(a) that supports his claim.

Vogelzang contends he owed no duty to Carr.  Vogelzang does not dispute the language of section 2-2201(a) but asserts that since its enactment, no case has held as Carr suggests. Moreover, Vogelzang cites four cases that postdate 1997 that, he alleges, held insurance agents owe no duty to the insureds in procuring adequate insurance: Moore v. Johnson County Farm Bureau, 343 Ill. App. 3d 581, 585, 798 N.E.2d 790, 793 (2003); Pekin Life Insurance Co. v. Schmid Family Irrevocable Trust, 359 Ill. App. 3d 674, 834 N.E.2d 531 (2005); AYH Holdings, Inc. v. Avreco, Inc., 357 Ill. App. 3d 17, 826 N.E.2d 1111 (2005); and Young v. Allstate Insurance Co., 351 Ill. App. 3d 151, 812 N.E.2d 741 (2004).

We review de novo a trial court's decision to dismiss a complaint under section 2-615.  Malcome v. Toledo, Peoria & Western Ry. Corp., 349 Ill. App. 3d 1005, 1006, 811 N.E.2d 1199, 1201 (2004).  We will affirm the dismissal only when, upon considering the allegations in the light most favorable to the nonmovant, it is clear no set of facts can be proved to entitle the nonmovant

to relief.  <u>Malcome</u>, 349 Ill. App. 3d at 1006, 811 N.E.2d at 1201.

Historically, Illinois treated insurance brokers, or agents of the insured, differently than it treated insurance agents, or agents of the insurer.  See <u>Browder v. Hanley Dawson Cadillac Co.</u>, 62 Ill. App. 3d 623, 629, 379 N.E.2d 1206, 1210 (1978) ("An insurance broker is distinguished from an insurance agent in that he is not permanently employed by any principal, but holds himself out to employment by the public").  The distinction was significant in that it affected tort liability:

> "Whereas the insured's agent or broker has a duty of care, competence, and skill in performing all aspects of the insurance transaction, no such duty is imposed upon the insurer's agent regarding its duties toward a customer of the insurer."  <u>Bellmer v. Charter Security Life Insurance Co.</u>, 105 Ill. App. 3d 234, 239, 433 N.E.2d 1362, 1366 (1982).

In 1996, the General Assembly enacted section 2-2201 of the Civil Practice Law, which addressed liability of insurance producers in the placement of insurance.  See Pub. Act 89-638, §5, eff. January 1, 1997 (1996 Ill. Laws 3361, 3361) (adding 735 ILCS 5/2-2201 (West 1998)).  Carr's claims hinge on the interpretation of section 2-2201.

When interpreting a statute, the goal of this court is to ascertain the legislature's intent.  <u>Department of Public Aid ex rel. Schmid v. Williams</u>, 336 Ill. App. 3d 553, 556, 784 N.E.2d

416, 418 (2003). To achieve this goal, we begin with the language of the statute, which is "the surest indicator" of legislative intent. Williams, 336 Ill. App. 3d at 556, 784 N.E.2d at 418. In interpreting the statute's language, we are limited to the language before us and may not "'depart from the plain meaning'" of those words. Williams, 336 Ill. App. 3d at 556, 784 N.E.2d at 418, quoting In re Marriage of Beyer, 324 Ill. App. 3d 305, 310, 753 N.E.2d 1032, 1036 (2001).

Section 2-2201(a) states the following:

"An insurance producer, registered firm, and limited insurance representative shall exercise ordinary care and skill in renewing, procuring, binding, or placing the coverage requested by the insured or proposed insured." 735 ILCS 5/2-2201(a) (West 1998).

Section 2-2201 does not define "insurance producer." The term, however, is defined by the Illinois Insurance Code as "a person required to be licensed under the laws of this State to sell, solicit, or negotiate insurance." 215 ILCS 5/500-10 (West 2002).

A plain reading of the statute, combined with section 500-10, is that any "person required to be licensed *** to sell, solicit, or negotiate insurance" had a duty to "exercise ordinary care" in procuring insurance. We find no distinction in either of these sections between an insurance agent or an insurance broker.

Vogelzang neither disputes the plain language of section 2-2201 or section 500-10, nor attempts to explain the plain

meaning of the text. Instead, Vogelzang emphasizes the case law existing before the effective date of section 2-2201(a) and argues no case since its inception has found section 2-2201(a) creates a duty. Vogelzang cites four decisions that, he contends, held insurance agents owed no duty to their customers.

The four post-section 2-2201(a) cases Vogelzang cites, however, are distinguishable. Neither Pekin Life Insurance, 359 Ill. App. 3d at 676-84, 834 N.E.2d at 532-39, AYH Holdings, 357 Ill. App. 3d 17, 826 N.E.2d 1111, nor Young, 351 Ill. App. 3d at 153-72, 812 N.E.2d at 745-59, addresses section 2-2201(a). Interestingly, in AYH Holdings and in Young, the insurance at issue was sold and procured before the January 1, 1997, effective date of section 2-2201(a). See AYH Holdings, 357 Ill. App. 3d at 19-20, 826 N.E.2d at 1115; see Young, 351 Ill. App. 3d at 154, 812 N.E.2d at 745.

Moreover, in Moore, while the dissent discussed section 2-2201(a), the majority did not consider this section. In Moore, the plaintiffs were involved in an automobile collision with a tractor insured by Country Mutual. See Moore, 343 Ill. App. 3d at 582-83, 798 N.E.2d at 791. Because others not named in the suit were believed to have also suffered injuries, Country Mutual began an interpleader action and deposited an amount equal to its policy limits. The court found the actual damages exceeded the deposit and distributed the funds. See Moore, 343 Ill. App. 3d at 583, 798 N.E.2d at 791-92. Plaintiffs later filed suit against Country Mutual. In their complaint, plaintiffs asserted Country Mutual failed to procure "'the proper type and amount of

insurance coverage'" for the type of business done. <u>Moore</u>, 343 Ill. App. 3d at 583, 798 N.E.2d at 792.

The <u>Moore</u> plaintiffs urged the court to find no rational basis for distinguishing between agents and brokers. Country Mutual responded it had no duty to provide "adequate" insurance. <u>Moore</u>, 343 Ill. App. 3d at 584-85, 798 N.E.2d at 793. The majority did not consider section 2-2201(a). Instead, the court construed plaintiffs' claim as one alleging a duty to provide adequate insurance. The court found "Country Mutual owed no duty to the insured to determine what would constitute 'adequate' insurance coverage and to provide coverage in that amount." <u>Moore</u>, 343 Ill. App. 3d at 586, 798 N.E.2d at 794.

The dissent disagreed, not by concluding an insurance producer is under a duty to provide adequate coverage, but upon finding the complaint could be read as asserting a duty to provide the coverage requested. See <u>Moore</u>, 343 Ill. App. 3d at 588, 798 N.E.2d at 795-96 (Goldenhersh, J., dissenting). The dissenting justice focused on section 2-2201(a) and concluded the section allowed a claim that the insurance producer failed to provide the insurance requested. See <u>Moore</u>, 343 Ill. App. 3d at 587, 798 N.E.2d at 795 (Goldenhersh, J., dissenting).

<u>Moore</u> is distinguishable. Unlike <u>Moore</u>, this case does not deal with "inadequate" insurance. Carr did not have inadequate insurance such that the coverage applied but the dollar amount of that coverage was insufficient to pay for all damages. Instead, a fair reading of the complaint is Carr was denied all coverage and Carr pleaded Vogelzang breached the duty to procure the type of insurance necessary to cover the activities of his

business.  The Moore court did not hold, as Vogelzang contends, an insurance producer has no duty to provide the type of insurance coverage requested.  The majority simply construed the complaint as one asserting the coverage applied to the incident but provided less money than necessary to cover the damages.  See Moore, 343 Ill. App. 3d at 586, 798 N.E.2d at 794.

The failure of the majority in Moore to analyze section 2-2201(a) is troubling.  With no reference to the plain language of section 2-2201(a), Moore concluded "Illinois law recognizes a distinction between brokers and captive agents" by finding brokers had "a duty to procure adequate insurance," but "captive agents" did not.  See Moore, 343 Ill. App. 3d at 585, 798 N.E.2d at 793.

Further supporting Carr's argument section 2-2201(a) creates a duty of care for insurance agents are the sections that follow.  Section 2-2201(d) anticipates negligence actions against "insurance producers":

> "(d) While limiting the scope of liability of an insurance producer, *** the provisions of this [s]ection do not limit or release an insurance producer *** from liability for negligence concerning the sale, placement, procurement, renewal, binding, cancellation of, or failure to procure any policy of insurance."  735 ILCS 5/2-2201(d) (West 1998).

In addition, section 2-2201(b) removes the common-law basis for distinguishing between insurance brokers, who owed a fiduciary

duty to their customers (see <u>Kanter v. Deitelbaum</u>, 271 Ill. App. 3d 750, 755, 648 N.E.2d 1137, 1140 (1995)), and insurance agents, who owed the fiduciary duty to the insurers (see <u>Economy Fire & Casualty Co. v. Bassett</u>, 170 Ill. App. 3d 765, 771, 525 N.E.2d 539, 543 (1988)), by barring breach-of-fiduciary-duty claims against insurance producers:

> "No cause of action brought by any person or entity against any insurance producer *** concerning the sale, placement, procurement, renewal, binding, cancellation of, or failure to procure any policy of insurance shall subject the insurance producer *** to civil liability under standards governing the conduct of a fiduciary or a fiduciary relationship except when the conduct upon which the cause of action is based involves the wrongful retention or misappropriation by the insurance producer *** of any money that was received as premiums, as a premium deposit, or as payment of a claim." 735 ILCS 5/2-2201(b) (West 1998).

Accordingly, we hold section 2-2201(a) places a duty on insurance producers, including brokers and agents, to act with ordinary care in procuring insurance for insureds.

We further hold Carr's third-party complaint stated a claim for breach of the duty created in section 2-2201(a). According to the complaint, Carr sought an insurance policy from Vogelzang that would cover the jobs he performed in his construc-

tion business, and Vogelzang told Carr he sold him a policy that would do so. The complaint further alleges Vogelzang breached his duty of ordinary care by issuing Carr a policy that did not provide general coverage for "the most obvious risks associated with being a general contractor," and as a result of the breach, Country Mutual denied Carr coverage of a claim arising from Carr's work on a property. As to count II, Vogelzang moved to dismiss that count by challenging Carr's designation of him as an insurance broker and then by asserting Vogelzang, as an insurance agent, owed Carr no duty of care. As we stated above, this was properly designated as a section 2-619 argument.

A trial court may dismiss a complaint under section 2-619(a)(9) "when the asserted claim is barred by other affirmative matter that defeats the claim or voids its legal effect." Turner v. Fletcher, 302 Ill. App. 3d 1051, 1055, 706 N.E.2d 514, 517 (1999). On appeal, we review de novo a dismissal under section 2-619 to ascertain "whether a genuine issue of material fact exists and whether the defendant is entitled to judgment as a matter of law." Saichek v. Lupa, 204 Ill. 2d 127, 134, 787 N.E.2d 827, 832 (2003).

Carr emphasizes a factual dispute exists over whether Vogelzang is properly characterized as an insurance broker. While Vogelzang relied on an agent's agreement to show he was an agent of Country Mutual, Carr points to other language within Vogelzang's attachments that describes Vogelzang as an "independent contractor." Carr further stresses Country Mutual denied Carr's allegation in his counterclaim that Vogelzang was an agent or employee of Country Mutual.

˅ 13 ˅

The factual dispute is not dispositive of the issue because it is not over a material fact. It is irrelevant whether Vogelzang is an agent or a broker under section 2-2201(a). Both fall within the definition of insurance producer, a conclusion Vogelzang does not dispute. Because both are insurance producers, both brokers and agents owe the duty of care set forth in section 2-2201(a). We find dismissal of count II on this ground inappropriate.

C. The Moorman Doctrine

Carr next argues the trial court erred in finding counts I and II barred by the Moorman doctrine. Carr contends the Moorman doctrine does not apply for two reasons. First, Carr maintains because Vogelzang's duty to him arises by statute, it is an extracontractual duty to which the Moorman doctrine does not apply. In the alternative, Carr contends the fraudulent-misrepresentation exception to the Moorman doctrine applies.

Vogelzang argues the court properly concluded the Moorman doctrine bars Carr's claims. Vogelzang responds to Carr's arguments by asserting he owed no duty to Carr and by contending, under First Midwest Bank, N.A. v. Stewart Title Guaranty Co., 218 Ill. 2d 326, 843 N.E.2d 327 (2006), the fraudulent-misrepresentation exception to the Moorman doctrine is inapplicable because Vogelzang is not in the business of supplying information.

The economic-loss doctrine, or Moorman doctrine, has its Illinois roots in Moorman, 91 Ill. 2d 69, 435 N.E.2d 443. In Moorman, the plaintiff sued to recover damages under various tort

causes of action resulting from "an alleged crack in a grain-storage tank."  <u>Moorman</u>, 91 Ill. 2d at 72, 435 N.E.2d at 444.
The Supreme Court of Illinois reasoned the plaintiff could not recover under the tort theories upon finding "at common law, purely economic loss was generally not recoverable in tort."
<u>First Midwest Bank</u>, 218 Ill. 2d at 337, 843 N.E.2d at 333, citing <u>Moorman</u>, 91 Ill. 2d at 81, 435 N.E.2d at 448.  The court concluded that contract law, protecting expectation interests, provided "'the proper standard when a qualitative defect [was] involved.'"  <u>First Midwest Bank</u>, 218 Ill. 2d at 337, 843 N.E.2d at 333, quoting <u>Moorman</u>, 91 Ill. 2d at 81, 435 N.E.2d at 448.

The <u>Moorman</u> doctrine, however, does not apply when a duty arises that is extracontractual.  See <u>Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.</u>, 159 Ill. 2d 137, 162, 636 N.E.2d 503, 514 (1994) ("Where a duty arises outside of the contract, the economic[-]loss doctrine does not prohibit recovery in tort for the negligent breach of that duty").
For instance, in <u>Kanter</u>, the First District rejected the argument the <u>Moorman</u> doctrine barred a claim against an insurance broker who failed to procure the health-insurance coverage as agreed.
<u>Kanter</u>, 271 Ill. App. 3d at 754-55, 648 N.E.2d at 1140.  The court reasoned the broker, who had a fiduciary duty to the insured, had a duty that arose outside the contract.  <u>Kanter</u>, 271 Ill. App. 3d at 755, 648 N.E.2d at 1140.  While it is true <u>Kanter</u> was decided before the effective date of section 2-2201(a), its analysis is consistent with our earlier holding because section 2-2201 removed the broker-agent distinction in this context.

Vogelzang does not dispute the proposition the <u>Moorman</u> doctrine does not apply when an extracontractual duty is present. Vogelzang contends he owed no extracontractual duty to Carr. As we determined above, that proposition is incorrect.

For this reason, too, Vogelzang's and the trial court's reliance on <u>Nielsen v. United Services Automobile Ass'n</u>, 244 Ill. App. 3d 658, 612 N.E.2d 526 (1993), is misplaced. In <u>Nielsen</u>, the plaintiffs purchased $40,000 in fire-insurance coverage from the insurer. When a fire destroyed the plaintiffs' home, plaintiffs learned they were underinsured. <u>Nielsen</u>, 244 Ill. App. 3d at 660-61, 612 N.E.2d at 528. In their amended complaint, the plaintiffs sued their insurer, alleging, in part, the insurer, "as the vendor of fire insurance to plaintiffs," had a common-law duty to sell only full coverage to the plaintiffs. <u>Nielsen</u>, 244 Ill. App. 3d at 666, 612 N.E.2d at 531-32. The trial court dismissed the plaintiffs' complaint upon finding no duty to support the negligence claim. <u>Nielsen</u>, 244 Ill. App. 3d at 666, 612 N.E.2d at 532.

The appellate court agreed. The court did so upon recognizing Illinois case law that found insurers have "an implied duty of good faith and fair dealing with respect to an insured. [Citation.] But this duty does not include the burden of reviewing the adequacy of an insured's policy when the policy is renewed." <u>Nielsen</u>, 244 Ill. App. 3d at 667, 612 N.E.2d at 532.

In <u>dicta</u>, the court then considered whether the <u>Moorman</u> doctrine barred the plaintiffs' negligence claim. <u>Nielsen</u>, 244 Ill. App. 3d at 667, 612 N.E.2d at 532. The court found, "[t]he

<u>Moorman</u> doctrine applies in this case precisely because count V of plaintiffs' complaint was rooted in disappointed contractual expectations even though count V sounded in negligence." <u>Niel-sen</u>, 244 Ill. App. 3d at 668, 612 N.E.2d at 533.

Before finding the <u>Moorman</u> doctrine barred the <u>Nielson</u> plaintiffs' claims, the court already determined the insurer owed the plaintiffs no extracontractual duty to ascertain the amount of insurance coverage needed. <u>Nielsen</u>, 244 Ill. App. 3d at 668, 612 N.E.2d at 533. Because Vogelzang owed Carr an extracontractual duty, as legislated in section 2-2201(a), the <u>Moorman</u> doctrine does not bar Carr's tort-based claim. To rule otherwise would be to render ineffective not only section 2-2201(a), but also section 2-2201(d), which expressly provides for negligence actions against insurance producers.

We conclude Vogelzang owed Carr a duty of care in pro-curing insurance. We find that duty is extracontractual and the <u>Moorman</u> doctrine does not prohibit Carr's claim. We need not determine whether the fraudulent-misrepresentation exception to the <u>Moorman</u> doctrine applies.

### III. CONCLUSION

We reverse the trial court's order dismissing counts I and II with prejudice and remand for further proceedings.

Reversed and remanded.

TURNER, P.J., and MYERSCOUGH, J., concur.